UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DERRICK ANDERSON

                    Plaintiff,

                                                    Case # 12-CV-6039-FPG

v.                                                  DECISION AND ORDER


Nurse SERENA BUIE, Nurse JOE WERTMAN,
Nurse DUANE GANTT, Sheriff TIMOTHY B. HOWARD,
Former County Executive CHRIS COLLINS

                    Defendants.

---

At all times relevant for this Order, Plaintiff Derrick Anderson was an inmate at Erie County Holding Center in Buffalo, New York. He brings this action *pro se* under 42 U.S.C. § 1983 for damages against Nurse Serena Buie, Nurse Joe Wertman, Nurse Duane Gantt, Sheriff Timothy B. Howard, and former County Executive of Erie County Chris Collins. ECF No. 4. All Defendants have moved to dismiss the Amended Complaint. ECF Nos. 15, 19, 31. Additionally, Plaintiff has moved for expedited discovery of materials relating to Erie County Holding Center's medical protocols. ECF No. 43.

## BACKGROUND

The following is drawn from the Amended Complaint and the materials attached to it. Plaintiff's claims are based on three separate incidents that took place at Erie County Holding Center (the "Holding Center") in early 2011. All three of the incidents involve nurses not giving Plaintiff his prescribed medications.

I.      **Incident Regarding Nurse Serena Buie**

The first incident occurred on February 17, 2011.  On that date, during a period of the day called "evening med run" where nurses pass out medication to inmates, Nurse Serena Buie failed to give Plaintiff his diabetes, cholesterol, heart, and anti-stroke medications.  ECF No. 4, at 3. Nurse Buie then wrote on Plaintiff's medical chart that she did give him those medications.  *Id.* Plaintiff subsequently made a request for emergency sick call, the request was denied, and he returned to his cell without medication or treatment.  *Id.* at 3–4.

Plaintiff alleges that as a result of not receiving his prescribed medications on February 17, 2011, he suffered mental anguish, stress, migraine headaches, diabetic nerve pain in his hands and feet, and severe pain in his head, hands, feet, eyes, and ears.  *Id.*  These injuries lasted for about thirty days until Plaintiff was taken to the jail infirmary on March 20, 2011, where he was diagnosed with migraine headaches resulting from his diabetes.  *Id.* at 4.

There is some ambiguity as to when Plaintiff next received his prescribed medications. Based on the Complaint's references to "morning medications," "afternoon medications," and "evening med run," the Court infers that Plaintiff was receiving medication 2-3 times per day. *Id.* at 3, 7–8.  With this context in mind, Plaintiff alleges that after Nurse Serena Buie failed to give him his medication on February 17, 2011, "[Neither] Defendant R.N. Serena [Buie], nor prison authorities . . . provide[d] plaintiff with treatment or medication until 2/23/11."  *Id.* at 4. In other words, at first glance, Plaintiff may be alleging here that there was a six-day period after February 17, 2011 where neither Nurse Buie nor anyone else from the Holding Center gave him his prescribed medications.

The documents attached to the Amended Complaint, however, cast doubt on the notion that Plaintiff did not receive his prescribed medications for six days.  For instance, in the grievance Plaintiff filed with the Holding Center on February 19, 2011—two days after the

incident and, notably, right in the middle of any six-day gap in his receipt of prescribed medications—Plaintiff makes no mention of a continued failure to receive medication in the days following February 17, 2011. *Id.* at 32. Additionally, in an internal memorandum dated February 20, 2011, one Holding Center official writes to another "concerning [Plaintiff] not receiving his PM medication on 2/17/11." *Id.* at 28. Again, all parties involved are operating on the assumption that Plaintiff is complaining simply of a one-day failure to receive his medications, on February 17, 2011. In short, Plaintiff appears to be alleging here that he did not receive treatment for the pain he suffered as a result of the February 17, 2011 incident for six days, *not* that officials failed to give him *any of his prescribed medications* for six days.

The Court also notes that the internal memoranda between prison officials give more information about Nurse Buie's conduct on the day in question. The memoranda state that a deputy working alongside Nurse Buie on February 17, 2011 recalled that Nurse Buie never passed out evening medication to any of the inmates in Plaintiff's division of the jail on that date. *Id.* at 28–29. The deputy actually even asked Nurse Buie—twice—whether she had medication for the inmates in Plaintiff's division, and she responded simply with "no" and then "I do not have meds for back there." *Id.* One of the memoranda then goes on to state that Nurse Buie did, however, then log on Plaintiff's chart that she passed out his medications. *Id.* at 28.

The Court also notes that the Amended Complaint includes some vague yet worrisome allegations at the end of the paragraph devoted to Nurse Buie. Plaintiff alleges generally that he was "unable to obtain examinations or care upon request" and that he would have to "beg deputies or other staff for serious medical attention." *Id.* at 4–5. He similarly alleges that "[s]ick call," which the Court infers is the process by which inmates can notify staff that they are sick so that a nurse or doctor can then conduct an examination, occurs only "once a month." *Id.* at 4. In other words, Plaintiff asserts that when he is ill and believes he needs medical attention, he can

only be examined by a nurse or doctor once a month.  Again, these allegations are vague and are ascribed to Nurse Buie only to the extent that they are included in the one paragraph devoted to her, but they do fit into Plaintiff's overall narrative that he was denied treatment at the Holding Center.

## II.    Incident Regarding Nurse Joe Wertman

The second incident occurred on March 1, 2011, about two weeks after the Nurse Buie incident.  On that date, Nurse Joe Wertman brought the wrong medicine tray to Plaintiff's division of the jail and thus did not give Plaintiff his diabetes, cholesterol, blood pressure, heart, and anti-stroke medications.  *Id.* at 5–6.  In an ensuing confrontation with Plaintiff, Nurse Wertman told Plaintiff, "I don't have your medications, and I'm not going to get them." *Id.* at 5. Plaintiff then made a request for emergency sick call, the request was denied, and he returned to his cell without medication or treatment. *Id.* at 6.

Plaintiff alleges that as a result of not receiving his prescribed medications on March 1, 2011, he suffered mental anguish, stress, migraine headaches, diabetic nerve pain in his hands and feet, and severe pain in his head, hands, feet, eyes, and ears. *Id.* at 6–7.  These injuries lasted for nineteen days until Plaintiff was taken to the jail infirmary on March 20, 2011, where he was diagnosed with migraine headaches resulting from his diabetes. *Id.* at 6.

Plaintiff asserts that Nurse Wertman's conduct was retaliatory as Plaintiff had previously filed grievances against other nurses. *Id.* at 5.  Additionally, as a result of the confrontation between Nurse Wertman and Plaintiff, Nurse Wertman filed a misbehavior report that resulted in Plaintiff receiving fifteen days of "keeplock" (*id.* at 6) where, in essence, Plaintiff lost some privileges and was subject to extra confinement.

Again, Plaintiff makes an ambiguous allegation with regard to the March 1, 2011 incident that "[neither] RN Joe Wertman, nor prison authorities . . . provide[d] plaintiff with treatment or

medication until 3/20/11." *Id.* at 6–7.  Based on the grievance forms attached to the Complaint

where Plaintiff complains only about an incident on March 1, 2011, Plaintiff appears to be

alleging that he did not receive treatment for the pain he suffered as a result of the March 1, 2011

incident for nineteen days, *not* that officials failed to give him *any of his prescribed medications*

for nineteen days.  *Id.* at 35–40.  In other words, just like the Nurse Buie incident, Plaintiff is

complaining here about a one-day failure to receive scheduled medication coupled with a failure

to receive treatment for his pain for nineteen days.

The Court notes again that at the end of the paragraph devoted to Nurse Wertman,

Plaintiff includes the same vague allegations that he included at the end of the paragraph devoted

to Nurse Buie.  Plaintiff alleges that he was unable to obtain medical care upon request and that

he would have to beg staff for serious medical attention.  *Id.* at 7.  He similarly alleges that

"[s]ick call occurs once a month."  *Id.*  In other words, Plaintiff asserts that when he is ill and

believes he needs medical attention, he can only be examined by a nurse or doctor once a month.

Again, these allegations are vague and are attributed to Nurse Wertman only to the extent that

they are included in the one paragraph devoted to him, but they do fit into Plaintiff's overall

narrative that he was denied treatment at the Holding Center.

### III.  Incident Regarding Nurse Duane Gantt

The third and final incident occurred on April 15, 2011, about a month and half after the

Nurse Wertman incident.  On that date, Nurse Gantt was supposed to pass out Plaintiff's

morning medications.  *Id.* at 7–8.  However, Nurse Gantt apparently failed to locate Plaintiff in

the Holding Center until the afternoon, so at 2:15 p.m., Nurse Gantt gave Plaintiff some of his

morning medications and none of his scheduled afternoon medications.  *Id.*  Nurse Gantt then

"falsified" Plaintiff's medical chart by making it appear as though he had properly passed out

Plaintiff's medication.  *Id.* at 9.  Accordingly, when another nurse came by to make sure Plaintiff

had properly received all of his medications, she inadvertently gave Plaintiff some of his scheduled medications twice. *Id.* at 8–9. Plaintiff made a request for emergency sick call at some point after Nurse Gantt failed to pass out his medication, the request was denied, and Plaintiff returned to his cell without medication or treatment. *Id.* at 8.

Notably, the Amended Complaint is clear that the day of the incident, April 15, 2011, was Nurse Gantt's first day on the job. *Id.* at 10. Plaintiff himself acknowledges that the incident was due to Nurse Gantt's inexperience—the Complaint states that "[Nurse Gantt] should not have been sent out to pass out medications by himself on his first day on the job, not knowing the layout of the jail." *Id.*

As a result of Nurse Gantt's failure to give Plaintiff his medication on April 15, 2011, Plaintiff alleges he suffered a multitude of injuries: mental anguish, stress, migraine headaches, diabetic nerve pain in his hands and feet, high blood sugar, lower back pain due to herniated bulging discs, chest pains, and severe pain in his head, hands, feet, eyes, ears, and chest. *Id.* at 8. These injuries lasted for about thirty days until May 15, 2011. *Id.* Plaintiff also asserts that when he was taken to the jail infirmary after the incident, on April 21, 2011, he was diagnosed as suffering from migraine headaches resulting from his diabetes. *Id.* at 9.

Again, Plaintiff again makes an ambiguous allegation with regard to the April 15, 2011 incident that "[neither] RN Duane [Gantt], nor prison authorities . . . provide[d] plaintiff with treatment or medication until 4/21/11." *Id.* at 9. Based on the grievance forms attached to the Amended Complaint where Plaintiff complains only of a one-day incident, Plaintiff appears to be alleging that he did not receive treatment for the pain he suffered as a result of the incident for six days. *Id.* at 44–46. In other words, he is *not* alleging here that Nurse Gantt failed to give him *any of his prescribed medications* for six days. This is again simply an allegation about a one-day failure to receive medication coupled with a failure to receive treatment for pain for six days.

Finally, at the end of the paragraph devoted to Nurse Gantt, the Complaint includes the same vague allegations as were included at the end of the Nurse Buie and Nurse Wertman paragraphs. Plaintiff again alleges that he was unable to obtain medical care upon request and that he would have to beg staff for serious medical attention. *Id.* at 10. He similarly alleges that "[s]ick call" occurs only once a month. *Id.* Again, these allegations are somewhat unclear and are ascribed to Nurse Gantt only to the extent that they are included in the one paragraph devoted to him, but they again fit into Plaintiff's overall narrative that he was denied treatment at the Holding Center.

In sum, this action is based on three incidents in early 2011 where Plaintiff failed to receive his scheduled medications and then was not treated for the pain he subsequently suffered.

## DISCUSSION

All three nurses as well as Defendant Timothy B. Howard, the Sheriff of Erie County, and Defendant Chris Collins, the former County Executive of Erie County, have moved to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Chris Collins has also moved to dismiss the Amended Complaint under Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure. The Court will address each of the Defendants in turn.

### I.      The Legal Standard

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the Complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly,* 550 U.S. 544, 570 (2007)).  To meet this standard, the factual allegations must permit the court "to infer more than the mere possibility of misconduct." *Iqbal,* 556 U.S. at 679.

Plaintiff is proceeding *pro se,* so the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).  "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).  So while the court will draw the most favorable inferences that the complaint supports, it will not "invent factual allegations that [the plaintiff] has not pled." *Id.*

Plaintiff brings this claim against the Defendants under 42 U.S.C. § 1983.  Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  In other words, to recover under this section, a plaintiff must show a violation of a federal constitutional or statutory right.

The Supreme Court has determined that when prison officials deny medical care to prisoners, they violate the Eighth Amendment if the denial rises to the level of "deliberate indifference to serious medical needs." *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976).  Here, Plaintiff was a pre-trial detainee in state custody when he was denied medical treatment, so the deliberate indifference analysis technically falls under the Fourteenth Amendment. *See Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir. 2009).  The analysis is the same, however, under both the Eighth and Fourteenth Amendments. *See id.* at 72.

The deliberate indifference standard has both an objective and subjective prong. *See Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998).  "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994)

(citations omitted).  Second, the official must act with a "culpable state of mind" which, per the Second Circuit, equates to "recklessness" as that term is used in criminal law.  *See id.*; *Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d Cir. 2002) (per curiam).

The Second Circuit has provided further guidance on the first prong when the basis for an inmate's deliberate indifference claim is a "temporary delay or interruption in the provision of otherwise adequate medical treatment." *Smith v. Carpenter,* 316 F.3d 178, 185 (2d Cir. 2003). In short, instead of focusing on the inmate's "*underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,'" the Court should focus on the "challenged *delay* or *interruption* in treatment." *Id.* (emphasis in original) (quoting *Chance*, 143 F.3d at 702).  In other words, to satisfy the first prong, a plaintiff who temporarily did not receive his regular treatment cannot just allege that he has an objectively serious medical condition like diabetes.  Rather, the Court will look to, most importantly, the "actual medical consequences that flow from the alleged denial of care" in determining whether the prong is met. *Smith,* 316 F.3d at 187.

As for the second prong, an official acts with a sufficiently culpable state of mind when he "knows of and disregards an excessive risk to inmate health or safety."  The official must both be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).  Critically, an inadvertent failure to provide adequate medical care or mere negligence is not "repugnant to the conscience of mankind" and thus does not violate the Constitution.  *See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976) (internal quotation and citation omitted).  Stated differently, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106.

With these standards in mind, the Court first addresses the motions to dismiss by each of the three nurses.

## II.     Nurse Serena Buie

According to the Amended Complaint, Nurse Buie failed to pass out medication to Plaintiff on February 17, 2011 and then wrote on Plaintiff's chart that she did pass out his medication.   The question is whether Nurse Buie's conduct rises to the level of deliberate indifference.

The Court observes at the outset that this case is a far cry from cases where the Second Circuit has found that an interruption in treatment was serious enough to qualify as deliberate indifference.   For example, the Second Circuit has found that a prisoner adequately stated a deliberate indifference claim where he was in "great pain" for at least six months after prison dentists repeatedly refused to fill a cavity.   *See Chance*, 143 F. 3d at 700–702.   The *Chance* plaintiff was able to allege specific consequences that were easily traceable to the defendants' conduct—he was unable to chew properly, he had choked on his food, and, most alarmingly, it was possible that three of his teeth had degenerated to the point of requiring extraction.   *See id.* at 702.   Similarly, the Second Circuit has determined that a five-month delay in treatment for Hepatitis C caused sufficiently serious harm and, in another case, that a two-year delay in treatment of a broken pin in an inmate's hip caused persistent pain and thus caused sufficiently serious harm.   *See Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006); *Hathaway v. Coughlin*, 37 F.3d 63, 67 (2d Cir. 1994).

The denial of medical care here, in contrast, seems to be minor: Nurse Buie failed to give Plaintiff his scheduled medications on one day, February 17, 2011.   On a motion to dismiss, however, it is important to remember that "[t]he issue is not whether a plaintiff is likely to prevail ultimately." *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir. 1996) (quotations and

10

citations omitted).   With this in mind, the Court finds that Plaintiff's allegations about the multitude of injuries he suffered after February 17, 2011, coupled with specific details about Nurse Buie's behavior on the day in question, allow his claim against Nurse Buie to survive a motion to dismiss.

First, as to the objective prong where the Court looks primarily to the consequences of the denial of care, Plaintiff has identified a litany of medical consequences resulting from this incident.   Nurse Buie's one-day failure to pass out medication to Plaintiff was, allegedly, emotionally and physically traumatizing: Plaintiff suffered mental anguish, stress, migraine headaches, diabetic nerve pain in his hands and feet, and severe pain in his head, hands, feet, eyes, and ears.   These injuries lasted for about thirty days until Plaintiff was taken to the jail infirmary on March 20, 2011, where he was diagnosed with migraine headaches.

Additionally, Plaintiff includes an allegation that "[neither] Defendant R.N. Serena [Buie], nor prison authorities . . . provide[d] plaintiff with treatment or medication until 2/23/11." ECF No. 4, at 4.   Based on the fact that Plaintiff's grievance makes no mention of a six-day interruption in receiving his medication, and based on internal memoranda where officials clearly believed that Plaintiff was complaining about a one-day failure to receive treatment, the Court understands Plaintiff to mean that he was not given medication *for the pain he suffered* for six days after the incident.   There is a chance that Plaintiff means, however, that Nurse Buie did not give him *any of his prescribed medications* for six days after the incident.   This would, of course, be a much more serious allegation.   Given the injuries Plaintiff has identified and this ambiguity related to his receipt of medication, the objective prong is satisfied at this stage in the case.

Notably, to counter the allegation that Plaintiff did not receive treatment for six days after February 17, 2011, Nurse Buie directs the Court in her Motion to Dismiss to a medical log

attached to the Amended Complaint. The log appears to show that Plaintiff was "escorted to medical" at 19:36 hours on February 17, 2011 for a visit that lasted until 19:40 hours. ECF No. 4, at 31. Nurse Buie argues that because the log indicates that Plaintiff received four minutes of medical care on February 17, 2011, his allegation that he did not receive care for six days after Nurse Buie's failure to pass out his medication is flatly contradicted by documents attached to the Amended Complaint and, thus, the Court should disregard it. ECF No. 19-2, at 5–6.

A careful reading of all the documents attached to the Amended Complaint, however, shows that Nurse Buie allegedly failed to pass out medication during "evening med run" at some point around 20:20 hours on February 17, 2011. ECF No. 4, at 29. In other words, Plaintiff was "escorted to medical" for a four minute visit *prior to* Nurse Buie failing to pass out his medication. *Id.* at 31. In short, this medical log certainly does not show that Plaintiff received medication or was treated in any way after Nurse Buie's failure to pass out medication.

The Court next examines the subjective prong where Plaintiff must allege that Nurse Buie disregarded an excessive risk to his medical needs. As observed repeatedly above, Plaintiff appears to be complaining here of a one-day failure on Nurse Buie's part to dispense his medication. In the usual case, a one-day failure to pass out medication would likely be construed as simple negligence or medical malpractice. The Supreme Court has been clear that negligence does not rise to the level of deliberate indifference. *See Estelle*, 429 U.S. at 105.

There are indications in the documents attached to the Amended Complaint, however, that Nurse Buie's culpability rises above negligence. In the internal memoranda between officials mentioned above, a deputy recounted that Nurse Buie did not pass out medication to any of the inmates in Plaintiff's division of the jail. ECF No. 4, at 28–29. The deputy even asked Nurse Buie at the time—twice—whether she had medication for Plaintiff's division, and she

twice replied that she did not have medication for his division. *Id.* Nurse Buie then apparently logged on Plaintiff's medical chart that she did properly dispense his medication. *Id.* at 28.

In short, Nurse Buie was put on notice that certain inmates, including Plaintiff, had not received their medication on February 17, 2011. She never gave those inmates their medication and then, at least for Plaintiff, attempted to cover up the error by logging on Plaintiff's medical chart that she did dispense his medication. Drawing all inferences in Plaintiff's favor, Nurse Buie was aware by the time she was marking up Plaintiff's medical chart that he was taking a variety of medications for serious conditions. She disregarded the risk of him not receiving those medications. If proven, this conduct could rise to the level of criminal recklessness. Thus, the subjective prong is satisfied for purposes of a motion to dismiss.

The Court also notes that Plaintiff has included a variety of more general allegations in the paragraph devoted to Nurse Buie. For instance, he asserts that he was "unable to obtain examinations or care upon request" and that he would have to "beg deputies or other staff for serious medical attention." ECF No. 4, at 4–5. Most seriously, he alleges that "sick call occurs once a month." *Id.* at 4. The Court takes these allegations as true and, again, drawing all inferences in Plaintiff's favor, ascribes this myriad of problems to Nurse Buie. These allegations lend more weight to the suggestion that Nurse Buie was deliberately indifferent to Plaintiff's serious medical needs. Again, the Court finds it most prudent to examine at a later stage whether Plaintiff can support these allegations against Nurse Buie.

Before turning to the other Defendants, the Court notes that in the paragraph of the Amended Complaint devoted to Nurse Buie, Plaintiff makes a variety of conclusory and non-actionable allegations about both Nurse Buie and the Holding Center. For instance, he states that "RN Serena[] [Buie's] deliberate indifference to my medical needs was unprof[]essional, and inappropriate" and that "Defendants showed deliberate indifference to the medical needs of

plaintiff Anderson." *Id.* at 4. Additionally, he notes that medical care at the Holding Center is "inadequate and unprofessional," "[d]eficiencies are the norm," and "the screening process for determining whether a patient needed attention was inadequate." *Id.* The Court disregarded these types of conclusory allegations. *See Iqbal,* 556 U.S. at 681 ("[A]llegations [that] are conclusory [are] not entitled to be assumed true.").

In sum, for the reasons stated above, Nurse Serena Buie's Motion to Dismiss the Amended Complaint (ECF No. 19) is DENIED.

### III.  Nurse Joe Wertman

According to the Amended Complaint, Nurse Wertman failed to pass out medication to Plaintiff on March 1, 2011. Again, the question is whether Nurse Wertman's conduct rises to the level of deliberate indifference.

As for the objective prong where the Court looks at the consequences of the interruption in treatment, Plaintiff has alleged that he suffered the same injuries that he suffered following the Nurse Buie incident. Specifically, he alleges that he suffered mental anguish, stress, migraine headaches, diabetic nerve pain in his hands and feet, and severe pain in his head, hands, feet, eyes, and ears. ECF No. 4, at 6. These injuries apparently lasted for about nineteen days until Plaintiff was taken to the jail infirmary on March 20, 2011.

Plaintiff also includes an allegation that "[neither] RN Joe Wertman, nor prison authorities . . . provide[d] plaintiff with treatment or medication until 3/20/11." *Id.* at 6–7. Based on the fact that Plaintiff's grievance makes no mention of a nineteen-day interruption in receiving his medication, the Court understands Plaintiff to mean that he was not given medication *for the pain he suffered* for nineteen days after the incident. Again, however, it is possible that Plaintiff means that he did not receive *any of his scheduled medications* for nineteen days after the March 1, 2011 incident.

Taking Plaintiff's allegations about his "severe pain" for nineteen days as true, and given the ambiguity as to whether Plaintiff received his scheduled medications in the nineteen days following March 1, 2011, the Court finds that the objective prong is satisfied for purposes of a motion to dismiss.

As for the subjective prong, Plaintiff must allege that Nurse Wertman knew of and disregarded an excessive risk to Plaintiff's medical needs.  Given that Plaintiff observes in the Amended Complaint that "RN Joe Wertman brought the wrong medic[in]e tray to [my division]," it appears that Nurse Wertman's conduct was nothing more than negligence. *Id.* at 6. In the usual case, when a nurse simply brings the wrong medicine tray to a division of the jail and thereby fails to pass out an inmate's medication, the Court will typically construe the error as nothing more than a mistake sounding in negligence.

Plaintiff does include, however, some allegations about Nurse Wertman's conduct that allow his claim to again inch past the threshold for a motion to dismiss.  Notably, Nurse Wertman said to Plaintiff at some point after failing to pass out medication, "I don't have your medications, and [I']m not going to get them." *Id.* at 5.  This comment supports the idea that Nurse Wertman was aware that Plaintiff needed certain medications and, furthermore, that he disregarded those needs by failing to dispense Plaintiff's medications.

Notably, Plaintiff also vaguely alleges that Nurse Wertman "retaliated against [Plaintiff] for filing legitimate grievances against other nurses, and their inadequate medical department." *Id.* Presumably Plaintiff means that Nurse Wertman refused to retrieve Plaintiff's medications and argued with Plaintiff because Plaintiff had previously filed grievances against Nurse Wertman's coworkers.

The Court digresses briefly from the deliberate indifference analysis and notes that Plaintiff has not adequately pled, with this single conclusory allegation, a stand-alone retaliation

claim. The Second Circuit has observed that "because prisoner retaliation claims are easily fabricated, . . . we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks and citation omitted). Here, Plaintiff has made an allegation, wholly unsupported by any foundation or detail, that Nurse Wertman retaliated against him for petitioning the jail for redress of grievances. This is not enough to state a separate retaliation claim.

The retaliation allegation does, however, lend credence to the idea that Nurse Wertman's culpability may rise above negligence. Put simply, the allegation suggests that Nurse Wertman had some negative history with Plaintiff, and thus, Nurse Wertman may have had a motive to disregard Plaintiff's medical needs.

The Court also notes that just as he did in the paragraph devoted to Nurse Buie, Plaintiff has included a variety of more general allegations in the paragraph devoted to Nurse Wertman. Plaintiff asserts that he was "unable to obtain examinations or care upon request" and that he would have to "beg deputies or other staff for serious medical attention." ECF No. 4, at 7. Most seriously, he alleges that "[s]ick call occurs once a month." *Id.* The Court accepts these allegations as true and, again, drawing all inferences in Plaintiff's favor, ascribes the problems to Nurse Wertman. These allegations lend more weight to the suggestion that Nurse Wertman was deliberately indifferent to Plaintiff's serious medical needs. Once again, the Court finds it prudent to examine at a later stage whether Plaintiff can support these allegations against Nurse Wertman.

Plaintiff again makes a variety of conclusory and non-actionable allegations against Nurse Wertman. For instance, Plaintiff asserts that, "RN Joe Wertman exercised deliberate indifference, and intentionally failed to use skill, care, and learning that a competent nurse would employ in delivering medications," and that "RN Joe Wertman exercised deliberate indifference,

16

and intentionally failed to use commendable speed or skill in delivering plaintiff chronic illness medications." *Id.* at 5. Plaintiff also makes repeated reference to Nurse Wertman's lack of professionalism, his verbal abuse towards Plaintiff, and his failure to "step[] up, and tak[e] responsibility" for his actions. *Id.* The Court disregarded these types of conclusory allegations. *See Iqbal,* 556 U.S. at 681.

Finally, Plaintiff complains that after his argument with Nurse Wertman, Wertman filed a "falsified" misbehavior report that resulted in Plaintiff receiving fifteen days of "keeplock" where Plaintiff was subjected to extra confinement. *Id.* at 6. The Court notes briefly that even if the misbehavior report was "falsified," prisoners have no constitutional right to be free from a false accusation. *See Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986). This allegation is thus non-actionable.

In sum, Plaintiff's allegations surrounding the March 1, 2011 incident allow his claim against Nurse Wertman to survive at this stage. Nurse Joe Wertman's Motion to Dismiss the Amended Complaint (ECF No. 19) is therefore DENIED.

## IV.   Nurse Duane Gantt

Plaintiff alleges that Nurse Gantt failed to pass out medication to him on April 15, 2011. The question once again is whether Nurse Gantt's conduct rises to the level of deliberate indifference.

As for the objective prong where the Court looks at the consequences of the interruption in treatment, Plaintiff has alleged that he suffered essentially the same injuries that he suffered following the Nurse Buie and Nurse Wertman incidents. Specifically, he suffered mental anguish, stress, migraine headaches, diabetic nerve pain in his hands and feet, high blood sugar, lower back pain associated with herniated discs, and severe pain in his head, hands, feet, eyes,

and ears. These injuries apparently lasted for about thirty days until Plaintiff was taken to the jail infirmary on May 15, 2011.

Plaintiff also includes an allegation that "[neither] RN Duane [Gantt], nor prison authorities . . . provide[d] plaintiff with treatment or medication until 4/21/11." ECF No. 4, at 9. Based on the fact that Plaintiff's grievance makes no mention of a six-day interruption in receiving his prescribed medications, the Court understands Plaintiff to mean that he was not given medication *for the pain he suffered* for six days after the April 15, 2011 incident. Again, however, it is possible that Plaintiff means that he did not receive *any of his scheduled medications* for six days after the incident.

Taking Plaintiff's allegations about his "severe pain" for thirty days as true, and given the ambiguity as to whether Plaintiff received his scheduled medications in the six days following April 15, 2011, the Court finds that the objective prong is satisfied for purposes of a motion to dismiss.

As for the subjective prong, however, Plaintiff has not plausibly alleged that Nurse Gantt's conduct rises above simple negligence. On the day in question, Nurse Gantt was supposed to administer Plaintiff's morning medications. Unfortunately, due to it being Nurse Gantt's first day on the job, Gantt apparently failed to locate Plaintiff's division of the jail until the afternoon. Accordingly, around 2:15 p.m., Nurse Gantt administered some of Plaintiff's morning medications and none of his afternoon medications. Nurse Gantt then wrote on Plaintiff's medical chart that he passed out Plaintiff's medications. Later in the day, another nurse attempted to resolve the problem; Plaintiff acknowledges that "RN Crystal had to come give me the rest of my medications, some medications twice, because she wasn't sure what medications RN [Gantt] gave me." *Id.* at 9. In other words, Nurse Gantt's mistake caused Plaintiff to receive an incomplete set of his morning medications in the afternoon. Later that

day, another nurse tried to fix the problem and gave Plaintiff some of his scheduled medications twice.

This Court has already granted Plaintiff the benefit of all doubt regarding his claims against the other two nurses. The claim against Nurse Gantt, however, fails to similarly inch across the motion to dismiss threshold. Based on the Amended Complaint, it is clear that Nurse Gantt failed to timely administer Plaintiff's medications because it was Nurse Gantt's first day on the job. Another nurse attempted to rectify the problem later in the day. Given these allegations, Plaintiff does not state a claim that Nurse Gantt was deliberately indifferent to his medical needs.

The Court also notes that just as he did in the Nurse Buie and Nurse Wertman paragraphs, Plaintiff has included a variety of more general allegations in the paragraph devoted to Nurse Gantt. Plaintiff asserts that he was "unable to obtain examinations or care upon request" and that he would have to "beg deputies or other staff for serious medical attention." ECF No. 4, at 10. Most seriously, he alleges that "[s]ick call occurs once a month." *Id.*

Plaintiff's strategy of making the exact same factual allegations for each Defendant has not gone unnoticed by the Court and is, undoubtedly, a cynical one. With regard to this particular block of boilerplate allegations, the Court has previously credited them for the other two nurses because, to some extent, they fit into the overall narratives that those two nurses were aware of and disregarded a risk to Plaintiff. Here, however, though Plaintiff has once again asserted in the Nurse Gantt paragraph that "[s]ick call occurs once a month," it is simply impossible to plausibly ascribe any sort of culpability above simple negligence to Nurse Gantt.

As the Second Circuit has stated, "plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences

unreasonable." *L-7 Designs, Inc. v. Old Navy*, LLC, 647 F.3d 419, 430 (2d Cir. 2011). With regard to the allegations against Nurse Gantt, Plaintiff has made out at best, based on the full factual picture of the Nurse Gantt incident, a negligence claim. Any inference that Nurse Gantt is culpable beyond negligence on his first day at work is, simply stated, unreasonable.

Finally, in line with his copy-and-paste strategy, Plaintiff has included a variety of familiar conclusory and non-actionable allegations in the Nurse Gantt paragraph. For instance, he states that "Defendants showed deliberate indifference to the medical needs of plaintiff Anderson" and "RN Duane [Gantt] exercised deliberate indifference to my medical needs by intentionally not meeting his moral, medical, or legal responsibilities in this matter." ECF No. 4, at 9. Plaintiff also makes reference to Nurse Gantt's professionalism and his failure to "stop, and take responsibility." *Id.* at 8–9. Notably, Plaintiff also takes particular issue with Nurse Gantt's name tag: "RN Duane [Gantt] exercised deliberate indifference to my serious medical needs by intentionally failing to identify himself by putting his name tag inside his shirt." *Id.* at 7. The Court, once again, disregarded these threadbare and non-actionable allegations.

For the reasons stated above, Nurse Gantt's Motion to Dismiss the Amended Complaint as against him (ECF No. 19) is GRANTED.

## V.    Sheriff Timothy B. Howard

Sheriff Timothy B. Howard is the Sheriff of Erie County. Plaintiff has alleged that Sheriff Howard acted with deliberate indifference to his medical needs by inadequately hiring the three "unqualified" nurses. *Id.* at 13–14. Sheriff Howard has filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In reviewing this Motion, the Court uses the same standards for Rule 12(b)(6) motions recited above.

Sheriff Howard makes a variety of perfunctory arguments as to why Plaintiff fails to state a claim that the Court will briefly address. First, Sheriff Howard argues that "documentary

evidence" shows that the Erie County Sheriff's Office actually transferred responsibility for medical care of the Holding Center's inmates to the Erie County Department of Health. ECF No. 17, at 4. Accordingly, since Sheriff Howard does not oversee the Erie County Department of Health, he cannot be liable to Plaintiff for a denial of medical care. *Id.* In support of this argument, Sheriff Howard directs the Court to a contract between the Erie County Sheriff's Office and the Erie County Department of Health (ECF No. 16-2) as well as to a resolution of the Erie County Legislature that appears to authorize the transfer of responsibility for the medical care of inmates (ECF No. 16-4).

In a similar vein, Sheriff Howard argues that the three nurses were independent contractors. ECF No. 17, at 4. Accordingly, Sheriff Howard again argues that he did not oversee the nurses and thus cannot be liable to Plaintiff. *Id.* To support this argument, Sheriff Howard directs the Court to a contract between the Erie County Department of Health and "Maxim Healthcare Services, Inc.," an independent contractor. ECF No. 16-3.

Additionally, in a third argument based on documents outside the Amended Complaint, Sheriff Howard argues that he is entitled to qualified immunity. *Id.* at 8–9. To support this argument, he again directs the Court to the contract between the Erie County Department of Health and "Maxim Healthcare Services, Inc." ECF No. 16-3. In short, Sheriff Howard asserts that this contract required that the nurses be competent, and thus, Sheriff Howard could not have anticipated that the nurses' conduct would violate clearly established statutory or constitutional rights. ECF No. 17, at 9.

These arguments deserve little discussion. On a motion to dismiss, with a few exceptions, a district court may not consider material outside the pleadings. *See Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir. 1988). More specifically, a district court errs when it "consider[s] affidavits and exhibits submitted by"

defendants. *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir. 1991). All of these arguments are based on materials outside the Amended Complaint, and thus the Court has not credited them.

Sheriff Howard also argues that the Amended Complaint should be dismissed based on the law-of-the-case doctrine and *res judicata.* ECF No. 17, at 6–8. By way of background, Plaintiff originally filed a Complaint in this action that only included allegations about the Nurse Buie incident and that was, in general, much more cursory than the Amended Complaint. ECF No. 1, at 5–8. United States District Judge Michael A. Telesca issued a screening order under 28 U.S.C. § 1915 advising Plaintiff that his original Complaint failed to state a claim, and that unless Plaintiff filed an amended complaint, the case would be dismissed. ECF No. 3. Plaintiff subsequently filed the Amended Complaint (ECF No. 4), which became the operative pleading in this action.

Sheriff Howard argues that the Amended Complaint "does not resolve the problem identified by Judge Telesca," and thus Judge Telesca's ruling that Plaintiff previously failed to state a claim should be treated as law of the case or *res judicata.* ECF No. 17, at 7. The "problem" identified by Judge Telesca, per Sheriff Howard's Motion to Dismiss, is that Plaintiff had only alleged "a single incident of a nurse failing to provide him with medication, and no specific information regarding how he was harmed." *Id.* at 6.

First, the law-of-the-case doctrine has no application here. The law-of-the-case doctrine is a discretionary canon that essentially says that once a court has ruled on an issue in one stage of a case, the ruling becomes "binding precedent to be followed in subsequent stages of the same litigation." *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). The canon itself, however, builds in exceptions where there is an intervening change of law, new evidence is available, or where the court must correct its clear error. *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

Here, Plaintiff filed an Amended Complaint that included a multitude of new allegations that were not in his original Complaint. Most significantly, Plaintiff included for the first time in his Amended Complaint a variety of injuries that resulted from Nurse Buie's denial of treatment. Plaintiff also added two other nurses, Wertman and Gantt, and included detailed allegations about the injuries he suffered as a result of their errors. In short, there are new and important allegations before this Court that were not previously before Judge Telesca. Thus, the law-of-the-case doctrine does not apply.

*Res judicata* is even further afield. *Res judicata* is the umbrella term used to describe two concepts: claim preclusion and issue preclusion. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). The purpose of both claim preclusion and issue preclusion is to promote judicial economy by preventing parties from relitigating claims or issues that a court has already decided. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir. 1998).

The Court will speak only briefly on both claim preclusion and issue preclusion because they clearly do not apply. Claim preclusion bars relitigation of a claim where there has been a "valid and final judgment" on the claim's merits. *Phillips v. Kidder, Peabody & Co.*, 750 F. Supp. 603, 606 (S.D.N.Y. 1990). Judge Telesca's Order was not a "final judgment" on the merits in any sense; it was an initial screening order where Judge Telesca specifically told Plaintiff that he could file an amended complaint. The implication was that if Plaintiff filed an amended complaint, the case would proceed. Plaintiff indeed filed an amended complaint, the case has proceeded, and thus Judge Telesca's Order was not the final judgment on the claims. Claim preclusion does not apply.

Issue preclusion bars relitigation of an issue of fact or law where the issue has been "actually litigated and determined." *Bobby v. Bies*, 556 U.S. 825, 834 (2009). In no way did

Judge Telesca's initial screening Order address an issue that was "actually litigated"—the Order

was issued before Defendants even had a chance to respond to the original Complaint and before

Plaintiff had been given an opportunity to reply to that response.  Put simply, the case at that

point was in its most nascent stages.  Neither party had "actually litigated" a single issue.  Issue

preclusion thus does not apply.

Finally, Sheriff Howard includes a brief argument in his Motion to Dismiss that engages

with Plaintiff's claim more directly.  In short, Sheriff Howard argues that the inadequate hiring

claim must be dismissed as Plaintiff has not alleged that Sheriff Howard could have prevented

the harm by more carefully scrutinizing the nurses' qualifications.  ECF No. 17, at 5–6.

I agree that Plaintiff has not sufficiently alleged a deliberately indifferent hiring claim.

The standard required for a plaintiff to show that a supervisor's hiring decision rises to the level

of deliberate indifference is high:

> Only where adequate scrutiny of an applicant's background would
> lead a reasonable policymaker to conclude that the *plainly obvious*
> consequence of the decision to hire the applicant would be the
> deprivation of a third party's federally protected right can the
> official's failure to adequately scrutinize the applicant's
> background constitute 'deliberate indifference'.

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 411 (1997) (emphasis

added).  Stated more directly, a finding of deliberate indifference based on inadequate hiring

"must depend on a finding that *this* [hired applicant] was highly likely to inflict the *particular*

injury suffered by the plaintiff.  The connection between the background of the particular

applicant and the specific constitutional violation alleged must be strong."  *Id.* at 412 (emphasis

in original).

Plaintiff does not come close to making an allegation that, when Sheriff Howard hired

the nurses, it was "plainly obvious" that the nurses would violate Plaintiff's rights.  *Id.* at 411.

Instead of making any such allegations, Plaintiff resorts to "unadorned, the-defendant-

unlawfully-harmed-me accusation[s]." *Iqbal,* 556 U.S. at 678.  For instance, he asserts that "[a]s a result of [Sheriff] Timothy B. Howard['s] deliberate indifference to plaintiff Anderson['s] diabetic condition, plaintiff suffered further pain, and mental anguish."  ECF No. 4, at 14.  Later, he similarly alleges that "Sheriff Timothy B. Howard['s] deliberate indifference to my medical needs was unprofessional, and inappropriate" and that "[Sheriff] Howard['s] deliberate indifference of plaintiff['s] medical needs created a dangerous situation." *Id.* at 15.  Plaintiff also makes a variety of irrelevant allegations relating to the nurses' compensation, whether the nurses were receiving medical benefits, and how Plaintiff "deserves . . . more open[n]ess about hiring policies." *Id.* at 14.  Plaintiff has not stated a deliberately indifferent hiring claim with these allegations.

The outstanding problem for Sheriff Howard, however, is that the Court has previously found that Plaintiff plausibly stated deliberate indifference claims against two of the nurses. Accordingly, if Plaintiff can show that Sheriff Howard was personally involved in the incidents regarding those two nurses, Plaintiff can also state a deliberate indifference claim against Sheriff Howard.

In the context of a § 1983 action, a defendant who is a supervisor can be personally involved in a constitutional violation in a variety of ways.  First, of course, the defendant may directly participate in the incident.  *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995). Based on the face of the Amended Complaint, Sheriff Howard did not directly participate in any of the incidents.

A plaintiff may nonetheless show a supervisory defendant's personal involvement in one of four remaining ways:  (1) the defendant was informed of the violations through a report or appeal and failed to remedy the problem; (2) the defendant created or tolerated a policy or custom under which unconstitutional practices occurred; (3) the defendant was grossly negligent

in supervising those committing the wrongful acts; or (4) the defendant exhibited deliberate indifference by failing to act on information that unconstitutional acts were occurring. *Id.*

The Court has closely reviewed Plaintiff's Amended Complaint.  There is one single allegation in the Amended Complaint that could plausibly be construed as, perhaps, a custom under which unconstitutional practices occurred.  Plaintiff has attributed this allegation to all of the Defendants by including it in each of the Defendants' respective paragraphs; it is that "[s]ick call occurs once a month." *Id.* at 16.  Again, to the extent Plaintiff means that there is some sort of practice at the jail where he can only be examined by a doctor upon request once a month, that practice could conceivably rise to an actionable denial of care.  Without a single other specific allegation that Sheriff Howard at least tolerated a custom under which unconstitutional acts were occurring, however, it is questionable whether the Court would have allowed Plaintiff's claims against Sheriff Howard to survive on the basis of this allegation.

Unfortunately for Sheriff Howard, there is material outside the Amended Complaint that ultimately allows Plaintiff's claim against Sheriff Howard to survive a motion to dismiss.  The Court observes that in his response to Sheriff Howard's Motion to Dismiss, Plaintiff makes repeated reference to a Department of Justice ("DOJ") letter to Chris Collins, dated July 15, 2009.[1]  *See* Letter from Department of Justice, Civil Rights Division, to Chris Collins, County Executive of Erie County (July 15, 2009), *available at* http://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/Erie_findlet_redact_07-15-09.pdf [hereinafter cited as DOJ Letter].  Now the Court has refused, of course, to consider material that Sheriff Howard submitted outside the Amended Complaint on the pending motion.  But Plaintiff is proceeding *pro se*.  Accordingly, the Court has liberally constructed Plaintiff's Amended Complaint to include the DOJ letter. *See Rodriguez v. McGinnis,* 1 F. Supp. 2d 244,

---

[1] For an example of Plaintiff's references to the letter, *see, e.g.*, ECF No. 24, at 15–17.

246–47 (S.D.N.Y. 1998) ("Although material outside a complaint generally is not to be taken into consideration on a motion to dismiss, the policy reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations of a *pro se* plaintiff in opposition papers on a motion where, as here, those allegations are consistent with the complaint.").

The letter reports extensively on the DOJ's two-year investigation into confinement conditions at Erie County Holding Center and Erie County Correctional Facility. The findings in the letter are, without a doubt, disturbing. To summarize, the letter contains detailed allegations that officials at both facilities failed to prevent staff from inflicting serious physical and sexual abuse on inmates, failed to protect inmates from serious harm inflicted by other inmates, failed to provide adequate mental health and medical services to inmates, and failed to correct maintenance problems that posed a serious risk of harm to inmates. The Justice Department then filed a lawsuit based on these findings against Erie County, specifically naming Sheriff Timothy B. Howard and Chris Collins as defendants. *See United States v. Erie Cnty.,* 724 F. Supp. 2d 357, (W.D.N.Y. 2010). The parties entered into a consent decree to settle the lawsuit. *See* Press Release, Department of Justice, Justice Department Announces Agreement to Protect Prisoners from Life-threatening Conditions at Erie County, New York, Facilities (Aug. 18, 2011), *available at* http://www.justice.gov/opa/pr/justice-department-announces-agreement-protect-prisoners-life-threatening-conditions-erie.

The Court agrees with Plaintiff that the letter and the subsequent lawsuit put Sheriff Howard on notice that there was a litany of problems at the Holding Center. One of these problems was, according to a specific heading in the letter, the "Inadequate Administration of Medication." *See* DOJ Letter, at 28–36. This section of the letter starts off by stating generally that the "nursing staff who store and administer medication may be untrained in critical areas of security, accountability, common side effects of medications and documentation of

administration of medicines." *Id.* at 31–32.  It then goes on to say that the DOJ had received "consistent reports" from inmates that deputies at the Holding Center withhold medication as a form of punishment. *Id.* at 32.  The letter cites a specific instance where an inmate had to fake a seizure in order to receive his prescription medication. *Id.*  Additionally, the letter notes that "document management of inmate medical records [is] poor and often incomplete" and that nurses "fail to check inmate identification prior to administering medication." *Id.* at 30, 32.  The "Inadequate Administration of Medication" section of the letter concludes by saying that the procedures for medication administration at the Holding Center "are not consistent with generally accepted correctional standards." *Id.* at 33.

Given Plaintiff's allegations in the Amended Complaint and this letter, it is plausible that Sheriff Howard allowed the continuance of a policy or custom where nurses did not properly administer medication.   To briefly review Plaintiff's key allegations, Nurse Buie did not administer Plaintiff's scheduled medications, and she then did not give him medication for the severe pain he subsequently suffered for six days.  In another instance, Nurse Wertman did not administer Plaintiff's scheduled medications, and he then did not give Plaintiff medication for the severe pain he subsequently suffered for nineteen days.  Plaintiff has alleged that in both instances, the nurses improperly marked up medical charts and log books.  Nurse Buie wrote on Plaintiff's medical chart that she passed out his medication when she apparently did not, and—in a rather confusing allegation—Nurse Wertman "failed to sign the . . . log book before he attempted to pass out medications he didn't have on the medicine tray."[2]  ECF No. 4, at 5–6.

All of these allegations are simply too similar to the systemic problems described in the DOJ letter for the Court to say, as a matter of law, that Sheriff Howard did not tolerate a custom that led to the denials of care.  Notably, the DOJ letter also cites numerous letters sent from the

---

[2]      Plaintiff also alleged that Nurse Gantt "falsified" medical charts to make it appear as though he properly administered Plaintiff's medications.  ECF No. 4, at 9.

New York State Commission on Corrections (NYSCC) directly to Sheriff Howard. *See, e.g.*, DOJ Letter, at 32 n. 56 & 57. Based on the footnotes in the DOJ letter, these NYSCC letters describe many of the same problems regarding the inadequate administration of medication at the Holding Center. *See id.* In short, Sheriff Howard was certainly on notice prior to the incidents at issue that there were systemic problems relating to the administration of medication at the jail. Given Plaintiff's allegations, this is enough for the Court to deny Sheriff Howard's Motion and reexamine at a later stage whether the nurses' denials of care can be attributed to a policy or custom of Sheriff Howard.

Finally, to the extent Sheriff Howard has raised a qualified immunity defense that is not based on material outside the Amended Complaint, that argument is unavailing at this stage. Qualified immunity shields officials from liability for damages if their actions were objectively reasonable, as evaluated in the context of legal rules that were "clearly established" at the time. *See Poe v. Leonard*, 282 F.3d 123, 132 (2d Cir. 2002) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In other words, the defense is *not* available if the defendant (1) violated a clearly established right and (2) if his conduct was objectively unreasonable in the sense that a reasonable person would have known at the time that he was violating the law. *See Poe*, 282 F.3d at 132–33.

Here, the Second Circuit has determined that inmates have a "clearly established" right "to be free from deliberate indifference to serious medical needs." *LaBounty v. Coughlin*, 137 F.3d 68, 74 (2d Cir. 1998) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Accordingly, qualified immunity is only available for Sheriff Howard if it was objectively reasonable for him to believe that his conduct did not violate any of Plaintiff's rights.

At this stage in the case, the Court cannot rule as a matter of law that Sheriff Howard acted with objective reasonableness. Sheriff Howard was a party to a lawsuit based on specific

findings by the Department of Justice that staff at the Holding Center were systematically failing to provide adequate medical care to inmates. The DOJ letter specifically cautioned that "[a] delay in providing medical treatment may be so significant that it amounts to a denial of treatment." *See* DOJ Letter, at 28. Plaintiff has alleged that Sheriff Howard did not fix the problems described in the letter, and thus, Plaintiff did not receive his prescribed medications and was not treated for severe pain he suffered. The Court cannot conclude that it was objectively reasonable for Sheriff Howard to believe that his conduct did not violate any of Plaintiff's rights. Thus, Sheriff Howard is not entitled to qualified immunity.

For the reasons stated above, Sheriff Timothy B. Howard's Motion to Dismiss the Amended Complaint (ECF No. 15) is DENIED.

## VI.    Former County Executive Chris Collins

Chris Collins, the former County Executive of Erie County, has moved to dismiss the Amended Complaint against him on several grounds. He asserts that the Court lacks personal jurisdiction over him under Rule 12(b)(2), Plaintiff has insufficiently served process on him under 12(b)(5), and Plaintiff has failed to state a claim under Rule 12(b)(6).

The Court first addresses Collins's argument under Rule 12(b)(5). This requires some background information.

Plaintiff filed the original Complaint in this action on January 19, 2012. Importantly for reasons that will soon become apparent, Collins's term as County Executive of Erie County had already expired as of December 31, 2011. Plaintiff then filed the Amended Complaint on March 6, 2012.

Plaintiff is proceeding *in forma pauperis*, so, as United States District Judge William M. Skretny indicated in a July 2012 Order, Plaintiff is entitled to rely on the U.S. Marshals to serve the Summons and Complaint upon the Defendants. ECF No. 10. In August 2012, Plaintiff

mailed copies of the Summons and Amended Complaint via the U.S. Marshal to "Chris Collins, County Executive, Erie County Holding Center, 40 Delaware Avenue, Buffalo, NY 14202." ECF No. 32-1, at 2–5. The problem was that, as stated above, Chris Collins was no longer the County Executive of Erie County at this point. He also, apparently, never actually had an office at the Holding Center. Accordingly, when the Summons and Complaint were forwarded from the Holding Center to the Erie County Law Department, Assistant Erie County Attorney Kenneth Kirby received the process and deemed the service insufficient. ECF No. 32, at ¶ 15. Attorney Kirby thus entered an appearance in this action only for Sheriff Howard. ECF No. 14. The nurses are represented by other counsel.

When this Court realized in January 2013 that Collins had not yet acknowledged service or answered the Amended Complaint, it issued an Order directing Attorney Kirby to either provide an address for Collins or accept service for Collins. ECF No. 27. The Court then gave Plaintiff an additional ninety days, until April 10, 2013, to serve the Summons and Complaint on Collins. *Id.* Attorney Kirby subsequently entered an appearance for Collins on January 31, 2013 and, accordingly, agreed to accept service on Collins's behalf. ECF No. 28.

Unfortunately, Plaintiff did not serve Collins within the ninety-day period. Thus, Attorney Kirby argues now that Collins was never properly served and, therefore, this Court lacks personal jurisdiction over Collins.

The Court already rejected these arguments in *Anderson v. Lalley*, No. 12-CV-6355, 2015 WL 6686586, at *3–4 (W.D.N.Y. Oct. 29, 2015). *Anderson v. Lalley* actually grew out of the present case after Plaintiff attempted to file a "Second Proposed Amended Complaint" in the present case. That "Second Proposed Amended Complained," however, added new defendants and new allegations entirely apart from the incidents regarding Nurses Buie, Wertman, and Gantt. Accordingly, Judge Skretny determined that a new action should proceed, *Anderson v.*

*Lalley*, where the "Second Proposed Amended Complaint" was the operative complaint.  ECF No. 10.  Attorney Kirby represented Chris Collins in that case as well.  In *Anderson v. Lalley*, Kirby raised the exact same service argument based on the expiration of Chris Collins's term and the fact that Chris Collins never actually had an office at the Holding Center.  For the same reasons the Court previously rejected this argument, it rejects it here as well.

At the outset, it must be observed that the service of process rules for a *pro se* inmate proceeding *in forma pauperis* are relaxed.  The Second Circuit has been clear that the inmate is "entitled to rely on service by the U.S. Marshals" and, furthermore, the plaintiff's *in forma pauperis status* "shift[s] responsibility for serving the complaint from [the plaintiff] to the Court." *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986) (citing Fed. R. Civ. P. 4(c)(2)); *Wright v. Lewis*, 76 F.3d 57, 59 (2d Cir. 1996).  These principles generally mean that as long as the inmate "provides the information necessary to identify the defendant" to the U.S. Marshal, courts will find "good cause" to extend the period in which plaintiff must serve the defendant under the Federal Rules of Civil Procedure.  *Ruddock v. Reno*, 104 F. App'x 204, 206–07 (2d Cir. 2004) (citing Fed. R. Civ. P. 4(m)).  For this reason, this Court previously found "good cause" to extend, for an additional ninety days, the period in which Plaintiff could serve Collins.

Plaintiff failed to serve Collins within this period.  This does not, however, absolve this Court of its "responsibility" to serve the Complaint on Collins.  *See Wright v. Lewis*, 76 F.3d 57, 59 (2d Cir. 1996).  In line with this responsibility, the Court recounts that Attorney Kirby, the agent of Collins, has been on notice of this lawsuit for quite some time.  Indeed, he has effectively been on notice of this lawsuit against Collins since August 2012 when the Holding Center forwarded the process it received for Sheriff Timothy B. Howard and Chris Collins to

Attorney Kirby.  Then, on January 31, 2013, Attorney Kirby entered an appearance for Collins in this action, and from that point forward Collins has been on actual notice of the lawsuit.

The Court finds that on these facts, actual notice is sufficient notice.  This accords with other courts in this Circuit, which have found that "[w]here a party contesting service of process has received actual notice, service requirements . . . are construed liberally." *St. John Rennalls v. Cnty. of Westchester*, 159 F.R.D. 418, 420 (S.D.N.Y. 1994).  More specifically, deficiencies in service are "harmless error . . . when the party asserting deficient service has actual knowledge of the action and no prejudice results from the deficiency." *Id.*  Here, Attorney Kirby has effectively been on notice of this claim since August 2012 and Collins has been on actual notice of this claim since January 2013.  Judging from Attorney Kirby's arguments in Collins's Motion to Dismiss as to why Plaintiff fails to state a claim, Kirby has clearly had time to review and respond to the Amended Complaint.  Thus, no apparent prejudice results from the deficient service and so the deficient service is harmless error.  Moreover, as indicated above, Plaintiff's *pro se* status and his prior attempt to serve Collins through the U.S. Marshal counsel against a strict application of the service rules.  In sum, Collins's argument under Rule 12(b)(5) fails.

Collins also appears to argue that because service of process was insufficient, this Court lacks personal jurisdiction over him.  Taking the argument on its terms, the Court's determination above that service was effective is also a determination that personal jurisdiction over the Defendant exists.  More accurately, however, personal jurisdiction has simply never been in dispute in this case.  There has never been any argument that Collins lacks minimum contacts with New York.  *See Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945).

Accordingly, I turn next to Collins's arguments as to why the Amended Complaint fails to state a claim against him under Rule 12(b)(6).  Notably, the paragraph of the Amended

Complaint devoted to Chris Collins is, word-for-word, the exact same paragraph as the Sheriff Howard paragraph, save for a few transcription errors and of course the substitution of Collins's name. Thus, just as he did for Sheriff Howard, Plaintiff has alleged that Collins acted with deliberate indifference to his medical needs by inadequately hiring the three "unqualified" nurses. ECF No. 4, at 11.

Unfortunately, Collins has responded to these same allegations in his Motion to Dismiss in much the same way Sheriff Howard responded to the allegations; that is, the motion is based principally on material outside the Amended Complaint. In fact, it appears that every argument that Collins puts forth as to why Plaintiff fails to state a claim is based on, either directly or indirectly, one of the many exhibits attached the moving affidavit. ECF Nos. 32, 33; Fed. R. Civ. P. 12(b)(6). For example, Collins references the same contract that Sheriff Howard referenced between the Erie County Department of Health and "Maxim Healthcare Services, Inc.," an independent contractor, to try to show that Collins was not actually responsible for overseeing the nurses. ECF Nos. 33, at 8–9; 16-3. Other arguments in the motion are based directly on various sections of the Erie County Charter, a New York State Bar Journal Article, a resolution by the Erie County Legislature concerning budgetary matters, and the Erie County Legislature's Agenda on a particular day. ECF Nos. 32-7, 32-8, 32-9, 32-10, 32-12.

Again, on a motion to dismiss, a district court may not consider material outside the pleadings. *See Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir. 1988). There is a notable exception to this rule for parties proceeding *pro se*, and, indeed, the Court has allowed the Plaintiff in this case to take advantage of that exception. But Collins is represented by counsel and is not afforded the same liberality.

The Court at this point takes the opportunity to remind the parties of its responsibility on a motion to dismiss. In short, the Court's job at this stage is simply to take the Plaintiff's

allegations as true and test the legal sufficiency of those allegations.  It is *not* to make findings of fact—again, the Court accepts the Plaintiff's well-pleaded facts as true.  *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).  With the use of various exhibits, Collins is essentially asking the Court to make findings of fact; namely, that Collins did not actually have a duty to oversee the nurses.[3]  Similarly, Collins makes an absolute immunity argument on the basis of a budgetary resolution by the Erie County Legislature; his point is apparently that because "the acts of which Plaintiff complains pertain to Collins's participation in legislative/budgetary matters," Collins was acting in his legislative capacity and is thus entitled to legislative immunity.  ECF No. 33, at 20.  Again, with this argument, Collins is asking for a finding of fact by the Court.  That is not appropriate on a motion to dismiss.

In testing the legal sufficiency of the allegations against Collins, the Court finds that Plaintiff has stated a claim against Collins for the same reasons he stated a claim against Sheriff Howard.  This is understandable as, again, the allegations against Sheriff Howard and Collins are exactly the same.  In short, while Plaintiff has included only one specific allegation in his Amended Complaint that could be construed as a problematic custom or policy—"[s]ick call occurs once a month"—there is material outside the Amended Complaint that allows his claims against Collins to survive.  Specifically, the Department of Justice wrote a letter to Chris Collins on July 15, 2009 relating to confinement conditions at the Holding Center.  This letter formed the basis of a lawsuit brought by the DOJ against the Holding Center, *United States v. Erie Cnty.*, 724 F. Supp. 2d 357 (W.D.N.Y. 2010), where Chris Collins was a named party.  The letter reports extensively on a variety of problems at the jail, and it specifically details systemic problems with the administration of medication to inmates.  These findings are similar enough to

---

[3]     The Court would also note that in the event Sheriff Howard and Collins re-raise the arguments relating to, for instance, their duty (or lack thereof) to Plaintiff, the Court will look for citations to cases analogous to the one at hand.

Plaintiff's allegations that it is plausible that Collins tolerated a custom or policy that led to Plaintiff's injuries. In other words, it is plausible that Collins was personally involved in the Nurse Buie and Nurse Wertman incidents.

For similar reasons, Collins is also not entitled to qualified immunity. The Court cannot find, as a matter of law, that Collins's toleration of such a custom or policy was objectively reasonable.

For the reasons stated above and in the analysis regarding Sheriff Howard, Chris Collins's Motion to Dismiss the Amended Complaint (ECF No. 31) is DENIED.

### VII.   Plaintiff's Motion for Expedited Discovery

Plaintiff has filed a Motion for Expedited Discovery of materials relating to Erie County Holding Center's medical protocols. ECF No. 43. In a separate order, the Court will refer this case to a United States Magistrate Judge who will oversee discovery and all other non-dispositive pre-trial matters. Accordingly, this motion is presently DENIED WITHOUT PREJUDICE, and Plaintiff is entitled to refile it after the case is referred to a Magistrate Judge.

### CONCLUSION

For the foregoing reasons, Nurse Serena Buie's Motion to Dismiss the Amended Complaint (ECF No. 19) is DENIED. Nurse Joe Wertman's Motion to Dismiss the Amended Complaint (ECF No. 19) is DENIED. Nurse Duane Gantt's Motion to Dismiss the Amended Complaint as against him (ECF No. 19) is GRANTED. Sheriff Timothy B. Howard's Motion to Dismiss the Amended Complaint (ECF No. 15) is DENIED. Former County Executive Chris Collins's Motion to Dismiss the Amended Complaint (ECF No. 31) is DENIED. Plaintiff's Motion for Expedited Discovery (ECF No. 43) is DENIED WITHOUT PREJUDICE. By

separate order, the Court will refer this case to a United States Magistrate Judge who will oversee discovery and all other non-dispositive pre-trial matters.

IT IS SO ORDERED.

DATED:        December 23, 2015
              Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court